RENDERED: AUGUST 7, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0065-MR

COREY DAVIS                                                                      APPELLANT

v.

APPEAL FROM MADISON FAMILY COURT
HONORABLE NORA J. SHEPHERD, JUDGE
ACTION NO. 17-CI-50380

SANDRA DAVIS                                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND TAYLOR, JUDGES.

ECKERLE, JUDGE: Appellant, Corey Davis ("Father"), seeks review of the

Madison Family Court's orders, entered December 17, 2024, and May 6, 2025,

granting sole custody of the parties' three minor children to Appellee, Sandra

Davis ("Mother"), limiting his parenting time, and modifying his child support

obligation. After careful review of the briefs, record, and law, we affirm.

## I. Factual and Procedural History

Father and Mother married, and they have three children, born in 2012, 2014, and 2016. When they divorced, they agreed to joint custody and equal timesharing of the children in their marital settlement agreement, which was adopted by the November 2017 dissolution decree. They further agreed to forego child support and prepared a worksheet documenting their monthly income, which was similar, with Father earning approximately $400 a month more than Mother. Conflict arose just six months after the decree and has continued unabated.

In 2018, Father and Mother filed motions accusing each other of making disparaging comments in front of the children, preventing the children from interacting with the other parent at events, and refusing to coparent. Mother also raised issues related to Father's paramour at the time. The Family Court ordered the parties to complete the Families in Transition program and to attend mediation; it also appointed a Guardian *Ad Litem* (hereinafter "GAL") for the children.

In 2019, the parties continued to file various motions complaining of ongoing communication and coparenting issues. In March, Mother sought a no-contact order regarding this paramour and the children. Father denied Mother's claims and stated that his then-paramour had been living with him and the children for over one year, and that they were engaged to be married. However, less than a

month later, Father himself filed a petition for a protective order against the paramour stating that she was:

> creating a hostile environment for me and my children by becoming verbally abusive, throwing things, and becoming extremely unpredictable. She continues to act in this unpredictable, violent manner in front of my children after repeatedly being asked to stop. Devin was asked to leave but said that I would have to evict her and that, if I did, she would fabricate accusations that I hurt her in an attempt to have me "locked up." She has a history of this behavior with her previous relationships[.]

The parties subsequently agreed to a no-contact order, and the Family Court ordered the parties to obtain professional help with the coparenting.

In March of 2020, Father moved to lift the no-contact order due to his next impending marriage. Mother objected, arguing that Father was endangering the children because he had not proven that the safety issues alleged in his petition for protection had been resolved. She also raised additional concerns with Father and this paramour and of ongoing coparenting conflicts and misconduct. She requested sole custody and modified timesharing. Father made a countermotion for sole custody and to modify timesharing, renewing his claims that Mother refused to coparent, that she had fabricated abuse allegations against him and his fiancée, that she was hostile to him in front of the children, and that she was alienating the children from him.

After conducting a lengthy hearing, the Family Court issued an order on October 27, 2021, maintaining the *status quo*. The Family Court stated that it wanted to give Father a chance to improve his communication and coparenting despite finding that he had been continually combative in his communications with Mother, that he failed to communicate in an effective and timely manner, that he was not cooperative, that he engaged the children in activities and events without Mother's consent or knowledge, and that he had attempted to keep Mother away from the children's events and activities on his custodial days. The Family Court ordered Father and Mother to engage a parenting coordinator and to use a family communication application. It also ordered Father to undergo serious, intensive, regular therapy and denied his motion to lift the no-contact order.

Less than one year later, on September 9, 2022, Mother filed the underlying, verified motion to modify custody, timesharing, and child support. Therein, Mother alleged that Father was still refusing to communicate and coparent with her and that the children's mental, physical, and emotional health was endangered as a result. The motion identified the following concerns: the stability of the children due to Father's rapid integration of yet another paramour; Father's permitting their ten-year-old and eight-year-old children to ride in the front seat of motor vehicles against Mother's objection and medical advice; Father's driving the children on his recently-acquired motorcycle without showing Mother proof that

-4-

he had obtained a license and against her objection; and Father's continued failure to communicate about the children's whereabouts or about joint custody decisions. Mother attached to the motion an affidavit from a friend detailing that the children acted differently when in Mother's care versus Father's; they would ignore her (the friend) and Mother during Father's custodial days; and Father would ignore Mother when she would try to talk to him or ask a question.

In support of her motion for child support, Mother asserted her belief that Father earned significantly more income than she and asked that support be set pursuant to the guidelines with no offset if she were granted primary, residential custody of the children. She attached to the motion nine statements documenting the employment commissions that she earned during the preceding two months, a tax statement from 2020, and a statement advising Father of his duty to provide reciprocal information prior to a hearing on the motion.

Father denied that his behavior or communication endangered the children, arguing that Mother was simply unwilling to compromise and was attempting to dictate his life and choices, and he objected to any modification to his custody or timesharing. Father also disputed Mother's income and argued that her child-support motion did not comply with Kentucky Revised Statutes ("KRS") 403.213 or Kentucky Family Court Rules of Procedure and Practice ("FCRPP") 9(4).

On October 17, 2022, the Family Court issued a temporary order precluding the parties' paramours from being around the children except by agreement. In February of the following year, Mother filed a motion to hold Father in contempt for violating the no-contact order, alleging that Father had repeatedly permitted the first two paramours and now his newest paramour to stay in the home with the children. In opposition, Father again requested that the Family Court lift the no-contact order, stating his intention to become engaged to and marry this third paramour within the calendar year.

After several case management conferences and miscellaneous hearings on the various motions, the Family Court held a final hearing on all pending motions on July 27, 2023. At the outset of the hearing, Father moved the Family Court to deny summarily Mother's motion to modify custody, arguing for the first time that the motion was not compliant with KRS 403.340. The Family Court refused, noting the significant lapse of time. Father then stipulated that he had violated the terms of the no-contact order, and the Family Court heard testimony from Mother, Father, the children's therapist, and the parenting coordinator.

At the conclusion of the testimony, the Family Court took the matter under submission, continued the matter to July 11, 2024, and, ruling from the bench, granted Mother sole custody of the children and modified Father's

timesharing during the school year to every other weekend and one weekly overnight visit. The order memorializing the Family Court's findings and conclusions was entered on December 17, 2024.

In the order, the Family Court found that Father had repeatedly created a tense environment for the children by communicating with Mother in a disrespectful and confrontational manner and by prohibiting them from interacting with her at their events during his custodial time. It found that Father chose conflict at every turn as evidenced by his setting conflicting, unreasonable standards and rules, removing Mother from communications about the children, refusing to keep her apprised of vital information, making unilateral decisions about the children's activities and access to social media, failing to respond to Mother's questions as to the children's missing school or practice, declining to provide the children's address for vacation until after they had returned, and generally rejecting coparenting, even as to simple items like safety practices for motor vehicles, motorcycles, and open water.

The Family Court also found that Father's ever-changing relationships were negatively impacting the children. Father routinely enmeshed his paramours and their offspring quickly into the daily lives of the children. He and his paramours would have abrupt and frequent breakups, some occurring in the children's presence. The therapist reported that the children were struggling with

-7-

the constant change. The Family Court found that, in disregard of the impact his actions were having on the children, Father refused to reach an agreement about introducing his dates to the children; he did not comply with the therapist's request for notice of any changes; and he repeatedly violated the no-contact orders.

Ultimately, the Family Court determined that the children were in serious physical, mental, and emotional danger as long as the parties were joint custodians and that it was in the children's best interest to modify custody. It further held that timesharing needed to be modified to limit the children's exposure to the safety concerns posed by some of Father's parenting decisions. The Family Court also adopted the parties' agreement to a six-month prohibition on introducing new relationships to the children; it even expanded the order to include that any disruption in another relationship restarted the clock, and the other parent must be given the other person's biographical information prior to the introduction.

On April 21, 2025, the Family Court issued an order, *nunc pro tunc*, granting Mother's motion for child support retroactive to the date of her motion, finding that a material change had occurred. This appeal then followed.

## II.    Standard of Review

We review a Family Court's decision on a motion to modify custody and timesharing for an abuse of discretion. *See Pennington v. Marcum*, 266 S.W.3d 759, 769 (Ky. 2008). "The test for abuse of discretion is whether the

-8-

[Family Court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). However, we review the Family Court's factual findings for clear error to determine whether they are supported by substantial evidence. *Turner v. Turner*, 672 S.W.3d 43, 50-51 (Ky. App. 2023). Finally, we apply and interpret statutes *de novo*. *Id.*

### III. Analysis

#### A. Whether the Family Court erred in modifying custody.

Father argues three custody issues on appeal, claiming that the Family Court: (1) improperly granted a hearing when Mother's motion to modify custody was not compliant with KRS 403.340, (2) applied the incorrect standard for modification within two years, and (3) abused its discretion in granting modification. As he notes, KRS 403.340 provides that:

> (2) No motion to modify a custody decree shall be made earlier than two (2) years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe that:
>
> > (a) The child's present environment may endanger seriously his physical, mental, moral, or emotional health[.]
>
> . . .
>
> (3) If a court of this state has jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, the court shall not modify a prior custody decree unless after hearing it

-9-

finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider [factors enumerated in the statute but not set out herein].

Father contends that Mother's motion was fatally deficient and noncompliant with KRS 403.340(2) because its supporting affidavit did not allege the required element of serious endangerment.

We are not inclined to reach the merits of this argument. Rather, we agree with the Family Court that Father's objection, raised for the first time ten months after the motion was filed and after multiple case management hearings were held, was not timely. *See Masters v. Masters*, 415 S.W.3d 621, 624-25 (Ky. 2013) (holding that a party's non-compliance with KRS 403.340 is waivable error); *see also T.C. v. M.E.*, 603 S.W.3d 663, 682 (Ky. App. 2020).

Second, Father asserts that the Family Court failed to apply the heightened standard of KRS 403.340(2) for modification of custody within two years. We are unpersuaded. As Father acknowledges in his brief, the Family Court specifically made the requisite finding that the children's present environment seriously endangered their physical, mental, and emotional health. Accordingly, Father's claim lacks any merit.

-10-

Third, Father argues that the Family Court's conclusion that custody should be modified is inconsistent with its determination that the same issues did not merit modification only one year earlier and with its finding that his conduct had improved since that time. We are unconvinced. Although some of Mother's claims regarding Father's continued failures to communicate and coparent were akin to those raised in the prior proceedings, the Family Court decided the motion based on new facts and circumstances. For example, the Family Court found that since the 2018 order, Father had violated its no-contact order numerous times; he had engaged in new and continuing tumultuous relationships that exposed the children to constant change; and the children's therapist testified as to the negative impact that change was having on them. The Family Court determined that these facts outweighed Father's improvements in his communication, and we perceive no abuse of discretion. Father's behavior clearly warranted modification.

B. <u>Whether the Family Court failed to make the requisite findings to restrict Father's visitation time.</u>

Father asserts that the Family Court failed to make the requisite findings that visitation would seriously endanger the children. But he contends that the Family Court nonetheless restricted his parenting time and ordered no-contact for his paramours.

KRS 403.320(3) provides that a Court may modify a parent's visitation whenever it would serve the best interest of the child, "but the court

-11-

shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." "Restrict" does not mean merely to reduce a parent's current visitation schedule. *French v. French*, 581 S.W.3d 45, 50 (Ky App. 2019). Rather, a Court restricts a parent's rights if it provides less than reasonable visitation. *Id.*

In the order on appeal, the Family Court specifically found that the children were in serious physical, mental, and emotional danger, and particularly, it noted that the danger would continue as long as Mother and Father remained joint custodians. Father splits hairs claiming that the Family Court did not make this explicit finding regarding visitation. In undisputed fact, the Family Court stated that it was modifying timesharing to limit the children's exposure to safety concerns that continually arose while in Father's care, and it provided examples and supportive findings. We find that it is readily apparent the Family Court utilized the correct standard. While it did not repeat its recitation of the statutory language every time, reversal on that ground would merely elevate form over substance, which we will not do.

As to the no-contact order, other than Father's unsupported assertion that KRS 403.320 applies to this issue, he has provided no legal authority to support his position. Moreover, his contention is refuted by the plain language of the statute, which only addresses visitation rights for parents or relatives by blood

-12-

or affinity who were previously granted temporary custody. The statute does not encompass his steady stream of intermittent paramours. Father's claim is therefore without merit.

C. <u>Whether the Family Court erred by ruling on Mother's motion for child support.</u>

Father renews his argument that Mother's motion for child support was not compliant with KRS 403.213 or FCRPP 9(4) and should have therefore been dismissed. KRS 403.213(1) states that "[t]he provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of a material change in circumstances that is substantial and continuing." FCRPP 9(4) further provides that:

> (a) A motion to establish or modify child support shall be accompanied by the following:
>
> > (i) A completed child support guidelines worksheet with movant's portion completed.
> >
> > (ii) Copies of the movant's last three pay stubs or, if movant is self-employed, proof of the movant's current income.
> >
> > (iii) The most recently filed federal and state income tax returns.
> >
> > (iv) Verification of the cost of health insurance for the child(ren) only.

(v) A notice of hearing with the motion's hearing date or notice that the court will set the hearing, and the following statement: "You must file with the Court, at least 24 hours prior to the time of the hearing, a completed child support guidelines worksheet and copies of your last three pay stubs or, if self-employed, proof of your current income and the most current federal and state tax returns."

In support of his claim that the Family Court should have dismissed Mother's motion, Father cites *Martin v. Cabinet for Health & Family Services*, 583 S.W.3d 12 (Ky. App. 2019). In *Martin*, after noting that the petition did not comply with these provisions of law, this Court reversed a judgment setting child support. *Id.* at 19-20. However, after recognizing the motion's deficiencies, the Court proceeded to state that "[e]ven more significantly, [the movant] presented no evidence at the hearing or otherwise of any material change in circumstances that is substantial and continuing. . . . Absent any evidence, there could have been no such finding. Absent such a finding there can be no modification." *Id.* at 20. Accordingly, and contrary to Father's incorrect assertion, this Court did not hold that the deficiency of the motion alone mandated reversal.

Indeed, the law has long recognized that the requirements of statutes and Court rules are not always subject to a strict compliance standard, and substantial compliance may instead be sufficient. *See Webster County v. Vaughn*, 365 S.W.2d 109, 111 (Ky. 1962) (pertaining to statutes); *Dairyland Ins. Co. v. Clark*, 476 S.W.2d 202, 203 (Ky. 1972) ("[t]he proper application and utilization

of the Civil Rules should be left largely to the supervision of the trial judge and we must respect his exercise of sound judicial discretion in their enforcement"); *Ready v. Jamison*, 705 S.W.2d 479 (Ky. 1986) (pertaining to the appellate rules); *see also Kirkland v. Commonwealth*, 53 S.W.3d 71 (Ky. 2001) (finding harmless error for Trial Court's noncompliance with the criminal rules of procedure).

The application of a particular standard depends on whether the applicable provision of law is mandatory, necessitating strict compliance, or directory, which is satisfied by substantial compliance. *Knox County v. Hammons*, 129 S.W.3d 839, 842-43 (Ky. 2004). "[I]f the directions given by the [provision] to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the [provision] is to be regarded as directory merely." *Id.* at 843 (internal quotation marks and citation omitted).

We apply this standard to Father's assertion that Mother's motion did not comply with KRS 403.213 in that she failed to allege a material change in circumstances that is substantial and continuing. In Father's cited case of *Martin*, the movant made only a bare demand that support be set according to the guidelines; no facts were alleged. 583 S.W.3d at 15. Mother's motion, however, asserted her belief that Father made significantly more money than she, although she did not specifically state in her motion for modification that either party's earnings had changed from the time that support was initially calculated or that the

change was continuing. But no case exists in a vacuum. A quick review of the child support worksheet completed at the time of decree, which documented only a $416 discrepancy between the parties' monthly earnings, demonstrates the basis for Mother's claim of the requisite change in circumstances. Further, Mother simultaneously requested that timesharing be modified, which, if granted, would constitute an additional change in circumstances impacting support. *See* KRS 403.2122(5). Therefore, although it is always advisable to flesh out claims with more detail, Mother's motion substantially complied with KRS 403.213 because she alleged facts that could constitute a material change in circumstances.

Father also argues that Mother's motion was not compliant with FCRPP 9(4)(a). As stated above, Mother attached to her motion for child support nine statements documenting the fee commissions that she earned in the two months prior to her motion, a tax statement for 2020, and the requisite notice. She did not, however, include the worksheet or verification of health care costs, and therefore Father is correct that she did not strictly comply with FCRPP 9(4)(a). Thus, we must determine whether strict compliance was required and, if not, whether her motion substantially complied.

The purpose of FCRPP 9(4) is to ensure that the parties timely provide to each other and to the Family Court all information in their possession pertinent to setting or modifying child support. Per the parties' settlement agreement, Father

provided the children's health insurance. The information about the cost of insurance was therefore in his, and not in Mother's, possession. As for the worksheet, without the reciprocal information from Father, Mother's portion of the worksheet would only show her monthly gross income, a figure which is easily calculated from the tax statement or wage documents that she attached to her motion. In sum, Mother provided the requisite information that was in her possession, albeit not in the form required. Therefore, the purpose of the rule was accomplished. Father has not explained the manners by which Mother's noncompliance impacted him or the Family Court, and we discern no resulting harm. Thus, substantial compliance is the appropriate standard; Mother's motion was substantially compliant; and the Family Court did not abuse its discretion in ruling on the merits of the motion.

## IV. Conclusion

For the foregoing reasons, the judgment of the Madison Family Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rachel D. Yavelak
Lexington, Kentucky

BRIEF FOR APPELLEE:

Nanci M. House
Winchester, Kentucky